# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:16CV374

| | |
|---|---|
| SERITA B. GARREN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 6, 12). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

## I.     Procedural History

On June 8, 2012, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 301.) Plaintiff alleged a disability onset date of May 10, 2012. (T. 301.) The Social Security Administration denied Plaintiff's claim initially on September 6, 2012. (T. 301.) The claim was denied upon reconsideration on February 19, 2013. (T. 301.) On April 12, 2013, Plaintiff filed a written request for a hearing. (T. 301.)

On April 21, 2015, a disability hearing was held before an Administrative Law Judge ("ALJ") in Asheville, North Carolina. (T. 301.) The ALJ issued a decision finding that Plaintiff

was not disabled from May 10, 2012, through the date of his decision, July 7, 2015. (T. 301-315.) Plaintiff requested review of the ALJ's decision. (T. 1.) The Appeals Council denied Plaintiff's request for review. (T. 1-4.) On November 16, 2016, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1)

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir.

2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not cable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

III. The ALJ's Decision

In his July 7, 2015, decision, the ALJ ultimately found that Plaintiff was not disabled under Sections 216(i) and 233(d) of the Social Security Act. (T. 315.) In support of this conclusion, the ALJ made the following specific findings:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

(2)     The claimant has not engaged in substantial gainful activity since May 10, 2012, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

(3)     The claimant has the following severe impairments: fibromyalgia, obesity, migraine headaches, degenerative disc disease of the lumbar and cervical spine, arthritis of the hips and elbows, De Quervain's tenosynovitis of the left thumb, anxiety, a depressive disorder, a personality disorder, and a somatoform disorder (20 C.F.R. § 404.1520(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).[1]

(5)     The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).  In particular, the claimant can lift and carry 20 pounds occasionally and ten pounds frequently; stand for six hours and walk for six hours, each, in an eight-hour workday. The claimant is able to reach overhead and handle frequently.  The claimant is able to climb occasionally and balance, stoop, knee, crouch, and crawl frequently.  The claimant is unable to climb ladders, scaffolds, or ropes.  The claimant must avoid concentrated exposure to humidity, vibration, temperature extremes, and hazards.  The claimant is able to perform simple, one-to-two step tasks.  The claimant requires a low stress work environment, which in functional terms, to accommodate the stress, would have no public contact.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).[2]

(7)     The claimant was born on December 26, 1970, and she was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education, and she is able to communicate in English (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[1] The ALJ noted that the claimant's representative did not argue that her impairments met or medically equaled the severity of a listed impairment. (T. 305.)

[2] The ALJ found that Plaintiff has the following past relevant work:  retail salesperson, office manager, and customer service representative instructor.  (T. 314.)

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).[3]

(11)     The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2012, through July 7, 2015 (20 C.F.R. § 404.1520(g)).

(T. 301-315.)

## IV.     Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).   The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted).  It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id.  Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he or she is not disabled is supported by

---

[3] The VE testified that Plaintiff would be able to perform the requirements of representative occupations such as the following:  final inspector of smaller items, with 235,000 jobs in the United States; a bench assembler, with 207,000 jobs in the United States; and a mail clerk, non-post office, with 99,000 jobs in the United States.  (T. 315.)

substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law.  Id.

## V.     Discussion

### A.     The ALJ did not err by failing to make a finding regarding Plaintiff's ability to stay on task.

Plaintiff initially argues that the ALJ erred by failing to make a finding regarding her ability to "stay on task for a full workday and workweek."  Pl.'s Mem. Supp. (# 7) at 7-9.  Citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff contends that the ALJ failed to account for her difficulties with concentration, persistence, or pace by addressing her ability to "stay on task" in the RFC.  Id.  Plaintiff concludes that the ALJ's decision is inadequate, and remand is warranted. Id. at 9.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  Social Security Ruling ("SSR") 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  Monroe, 826 F.3d at 189 (quoting SSR 96-8p).  In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence.  See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).   The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion.  Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).  With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis."  SSR 96-8p, 1996 WL 374184, at *1.

In Mascio, the Fourth Circuit Court of Appeals held that limitations in concentration, persistence, or pace cause work-related limitations with staying on task, and while the ALJ may

find that no limitations are required, an explanation is necessary. 780 F.3d at 638. The Fourth

Circuit Court of Appeals specifically held:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. <u>But because the ALJ gave no explanation, a remand is in order</u>.

<u>Id.</u> (internal citation omitted and emphasis added).

The Court finds that <u>Ponder v. Berryhill</u>, No. 1:15-CV-00289-RJC, 2017 WL 1246350

(W.D.N.C. Mar. 31, 2017), serves as persuasive authority on this issue. In the instant case as in

<u>Ponder</u>, the ALJ did not specifically use the words "stay on task," but his analysis reflects that the

RFC is supported by substantial evidence. <u>Id.</u> at *4. Moreover, as the Court noted in <u>Ponder</u>,

"<u>Mascio</u> only requires a remand when an ALJ's opinion is sorely lacking in a manner that frustrates

meaningful review." <u>Id.</u> (quoting <u>White v. Colvin</u>, No. 3:15-CV-00197-FDW, 2016 WL 3381265,

at *5 (W.D.N.C. June 14, 2016) (quotation omitted)).

In the instant case, the ALJ's RFC finding reflects the following analysis by the ALJ: The

ALJ found that on September 4, 2012, the consultative examiner, Dr. Hoogerman, found that

Plaintiff appeared to be functioning at an average level of intelligence. (T. 305.) Dr. Hoogerman

found no evidence Plaintiff had treatment from a mental health professional. (T. 306.) Moreover,

there was no evidence of inpatient psychiatric treatment.[4] (T. 306.) Plaintiff admitted suffering

with depression, but Plaintiff claimed her doctor did not feel she needed therapy. (T. 306.)

The ALJ also found that the totality of the treatment records did not show that Plaintiff's

---

[4] The ALJ did not err by considering Plaintiff's limited mental health treatment because it was consistent with the limited mental limitations seen in the record. <u>See</u> <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); <u>Bottoms v. Comm'r of Soc. Sec.</u>, No. 4:16-CV-30, 2017 WL 4052192, at * 6 (W.D. Va. Aug. 23, 2017) (same).

mental impairments cause more than a moderate restriction in his activities of daily living, moderate difficulties in social functioning, or moderate difficulties in concentration, persistence, or pace. (T. 306.) The ALJ noted that State agency psychological consultants Eleanor E. Cruise, Ph.D. and Lori Brandon Souther, Ph.D. opined that the claimant has a moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and she has experienced no repeated episodes of decompensation, each of an extended duration. (T. 306.) The ALJ concluded that the paragraph B[5] and C[6] criteria were not satisfied. (T. 306.)

Plaintiff has not pointed to a shred of evidence that contradicts or undermines the ALJ's analysis. In sum, Plaintiff has failed to show legal error by the ALJ or that his RFC finding is not supported by substantial evidence. See Craig, 76 F.3d at 589 (recognizing that the District Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."). Therefore, the Commissioner is entitled to summary judgment on this issue.

**B.      The ALJ properly addressed Plaintiff's social functioning.**

Plaintiff next argues that the ALJ erred by failing to provide the requisite assessment regarding the effect her difficulties in social functioning have on her ability to engage in sustained

---

[5] Paragraph B consists of four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Johnson v. Comm'r Soc. Sec., No. GLR-17-1587, 2018 WL 703256, at *3 (D. Md. Feb. 5, 2018). A five-point scale is used to rate the claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. Id.; see 20 C.F.R. § 404.1520a(c)(2). To satisfy Paragraph B, a claimant must have either "marked" limitations in two of the first three areas, or a "marked" limitation in one of the first three areas, in addition to repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02.

[6] Paragraph C applies to listings 12.02, 12.03, 12.04, 12.06, and 12.015, and it provides the criteria used to evaluate "serious and persistent mental disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (Mental Disorders). To satisfy paragraph C, the mental disorder must be "serious and persistent," which means that the disorder must be medically documented over at least two years. Id. In the instant case, when evaluating Plaintiff's mental conditions, the ALJ compared them to listings 12.04 (depressive disorders) and 12.06 (anxiety). (T. 305.)

8

work activities.  Pl.'s Mem. Supp. (# 7) at 9. In particular, Plaintiff contends that the ALJ failed to analyze how she would interact with supervisors and coworkers.  Id. at 9-10.  Plaintiff concludes that remand is warranted.  Id. at 11.

Contrary to Plaintiff's argument, the ALJ specifically noted that Dr. Hoogerman found Plaintiff would "[have] no problems with her bosses or peers."  (T. 306) (emphasis added).  The ALJ also noted that Plaintiff attends church on Sunday.  (T. 306.)  When fashioning Plaintiff's RFC, the ALJ concluded that "[t]he claimant requires a low stress work environment, which, in functional terms, to accommodate the stress, would have no public contact."  (T. 307) (emphasis added).

In sum, Plaintiff's argument is belied by the record.  Consequently, the Commissioner is entitled to summary judgment on this issue.

**C.      The ALJ properly assessed Plaintiff's restrictions in activities of daily living.**

Plaintiff next argues that the ALJ failed to discuss the effect of her moderate limitations in activities of daily living.  Pl.'s Mem. Supp. (# 7) at 11-13. Plaintiff argues that remand is warranted for a complete evaluation of her mental functional abilities.  Id. at 12-13.

The ALJ bears the responsibility for assessing a claimant's RFC.  20 C.F.R. § 404.1546(c). "It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."  Bradshaw v. Berryhill, No. 0:16-3530-PJG, 2018 WL 822342, at *4 (D. S.C. Feb. 12, 2018) (quoting Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659, at *3 (W.D.N.C. July 21, 2014)).

Plaintiff has not met her burden, and she essentially asks this Court to reweigh the evidence. The ALJ's RFC finding, as it relates to her activities of daily living, reflects the following:  The ALJ found that Plaintiff suffered "moderate restriction" in her activities of daily living.  (T. 305.)

9

Dr. Hooger, a consultative examiner who evaluated Plaintiff on September 4, 2012, noted that Plaintiff reported cooking and cleaning, getting everyone ready for school, driving three days a week, attending church on Sundays when she was able, having a wonderful current marriage, and getting along with others. (T. 306.)

The ALJ further found that the totality of the treatment records did not show that Plaintiff's mental impairments caused more than moderate restriction on her activities of daily living. (T. 306.) State agency psychological consultants Drs. Cruise and Souther opined that Plaintiff had only a moderate restriction in activities of daily living. (T. 306.)

In sum, Plaintiff has failed to show how the evidence warranted a RFC with greater restrictions than the ALJ's RFC finding. See Medina v. Astrue, 584 F. Supp. 2d 814, 823 (W.D.N.C. Nov. 3, 2008) (concluding that the ability to carry on "a moderate level of daily activities" was inconsistent with a claimant's alleged inability to work). Accordingly, the Commissioner is entitled to summary judgment on this issue.

### D.    The ALJ's reliance on the VE's testimony was appropriate.

Next, Plaintiff argues that the ALJ erred by accepting testimony from a VE that "appears" to conflict with the Dictionary of Occupational Titles ("DOT")[7] without getting an explanation from the VE. Pl.'s Mem. Supp. (# 7) at 13-17. In particular, Plaintiff asserts that the ALJ did not inquire of the VE about apparent conflicts between the VE's testimony and the DOT, and this error was not harmless. Id. at 13-14. Plaintiff concludes that in light of the ALJ's error, the ALJ's decision is not supported by substantial evidence and must be reversed. Id. at 13.

Pursuant to SSR 00-4p, an ALJ has an affirmative duty to elicit an explanation from a VE

---

[7] The DOT, published by the Department of Labor, gives detailed physical requirements for a variety of jobs. Morgan v. Berryhill, No. 16-1141, 2017 WL 4280787, at *3 n. 4 (D. Md. Sept. 27, 2017). While information found in the DOT is not conclusive evidence on the existence of jobs in the national economy, it can be used to create a rebuttable presumption on the matter. Id.

regarding any "apparent unresolved conflict" between the VE's testimony and the DOT. SSR 00-4p provides:

> Occupational evidence produced by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit Court of Appeals held that the ALJ must resolve apparent conflicts between the VE's testimony and the DOT before relying on the VE testimony. Id. at 207-09; Best v. Berryhill, No. 4:16-CV-268-D, 2017 WL 6626320, at *1 (E.D.N.C. Dec. 28, 2017). "[T]he ALJ need only identify 'apparent' conflicts— statements that are seeming real or true, but not necessarily so." Gordon v. Berryhill, No. 3:16-CV-130, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017) (quotation omitted).

In the instant case, the ALJ complied with his responsibilities and properly relied on the VE's testimony. A review of the record reveals the following: The ALJ properly asked the VE whether his testimony was consistent with the DOT, the VE responded affirmatively, and the ALJ so found. (T. 315, 357-60).

Plaintiff avers that there is a conflict, unresolved by the ALJ, between the VE's testimony and the DOT. Pl.'s Mem. Supp. (# 7) at 15. In particular, Plaintiff contends that the ALJ's RFC finding that Plaintiff is limited to simple, one-to-two step tasks is not compatible with proposed

jobs' reasoning levels 2 and 3.[8] Id. at 15-17.

Plaintiff's argument is belied by the case law in this District.  See, e.g. Carringer v. Colvin, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) ("There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is not inconsistent with a DOT reasoning level of either 2 or 3."); Davis v. Berryhill, No. 5:16-CV-00016-MR, 2017 WL 4248811, at *3 (W.D.N.C. Sept. 25, 2017) (same); Thomas v. Berryhill, No. 3:16-CV-00836-MOC, 2017 WL 3595494, at *5 (W.D.N.C. Aug. 21, 2017) (same); O'Neill v. Berryhill, No. 5:16-CV-129-DCK, 2017 WL 2469243, at *4 (W.D.N.C. June 7, 2017) (same).

In sum, there was no "apparent conflict" for the VE to resolve, and the ALJ's reliance on the VE's testimony was appropriate.  Therefore, the Commissioner is entitled to summary judgment on this issue.

**E.     The ALJ properly weighed Dr. Meyer's opinion.**

In Plaintiff's final issue, she argues that the ALJ erred by rejecting the opinion offered by rheumatologist Christopher G. Meyer, M.D., a treating physician, without giving valid reasons for doing so.  Pl.'s Mem. Supp. (# 7) at 17-22.  In particular, Plaintiff contends that the ALJ erred by failing to identify substantial evidence in support of his decision to "reject" Dr. Meyer's opinions. Id. at 19.  Plaintiff concludes that the ALJ's decision must be reversed and remanded.  Id. at 17, 22.

The Regulations provide as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

Evidence that you submit or that we obtain may contain medical opinions.  Medical

---

[8] "The DOT defines six reasoning levels which ascend in increasing levels of complexity."  Weaver v. Colvin, No. 1:10CV582, 2013 WL 3989561, at *10 n. 12 (M.D.N.C. Aug. 2, 2013); see Frye v. Berryhill, No. 1:16CV543, 2017 WL 3242259, at *6 (M.D.N.C. July 28, 2017) (recognizing that the DOT involves a six-level reasoning scale).

opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).[9]  The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration:  (1) length of treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  20 C.F.R. § 404.1527(c)(2)-(6); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 782 (D.S.C. Aug. 23, 2017). As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source.  20 C.F.R. § 404.1527(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013).

A review of the record reveals that the ALJ found as follows with respect to Dr. Meyer's opinions:

> The undersigned gives little weight to the opinion of Dr. Meyer on May 24, 2014, such as that the claimant is able to lift less than 10 pounds occasionally, stand and walk for a total of one hour in an eight-hour workday, and sit for a total of four hours in a eight-hour workday.
> Although Dr. Meyer is a treating source, the undersigned finds that this opinion is not consistent with the record as a whole, such as Dr. Meyer's February 6, 2014 treatment notes showing that the claimant had diffuse tenderness throughout, but her symptoms were more mild, had multiple fibromyalgia tender points, but more mild, no synovitis, and had mild tenderness of her MCP joints, PIP points, elbows, and knees and Dr. Glances July 18, 2013 and August 8, 2014 treatment notes showing that the claimant had a normal gait, grossly normal tone and muscle strength, and no effusions, misalignment, crepitus, or tenderness in major joints.  Doctor Meyers also limited climbing, kneeling, crawling, balancing, stooping, crouching, reaching, handling, pushing and pulling, exposure to Heights [sic], machinery, temperature extremes and vibration.
> He also opines the claimant will miss 2 times per month.  Doctor Meyers does not provide any rationale to support the conclusion that the claimant will miss 2 days per month.  Great weight is given to his opinion that the claimant can occasional [sic] he [sic] balance, stoop, crouch and has limitations with respect to temperature extremes, humidity, vibration and hazards.

---

[9] This reflects the Regulation as it stood on the date of the ALJ's decision, July 7, 2015.

Limited weight is given to the opinion with respect to reaching [and] handling and pushing and pulling since Doctor Myers did not qualify the limitation in accordance with agency policy. One is left to speculation [sic] as to the degree since it is not defined by terms such as "occasional", "frequent", or "constant". Nevertheless, limitations were provided in my residual functional capacity regarding reaching and handling.

Limited weight is given to his opinion regarding the total preclusion of climbing, kneeling and crawling. Physical examinations, diagnostic test and activities of daily living failed to reveal an underlying condition that is reasonably likely to cause the limitations. For example, Ms. Garren was examined revealing negative for back pain, joint stiffness, myalgias, joint swelling, limitation in range of motion of any joints. Examination further reveal full range of motion of the cervical spine, no neurologic signs of symptoms and no restriction of range of motion. Other records suggest the claimant's impairments are not of the severity requiring the limitations set forth by Doctor Meyers. The claimant denied numbness or tingling, reported that she was not taking any pain medications over-the-counter medications and had no difficulty walking. Similarly, other examinations revealed similar findings negative for arthralgias, back pain, joint stiffness, joint swelling, and no limitation of motion of any joint. Further, examination revealed no paresthesia or weakness, normal gait, normal tone, normal strength, no effusion, no misalignment, no crepitus or tenderness in any major joint.

While activities of daily living were not extensive the claimant was reported to get her daughter up for school, make sure her daughter is on time for school, makes sandwiches, packs leftovers for husbands [sic] dinner and tries to straighten up a bit. The claimant was reported needing help carrying [a] laundry basket, however she reportedly shopped in stores for 2 to 3 hours, clean[ed] the kitchen, made dinner, let the dog out, would pick up prescriptions, would do crossword puzzles, would do crafting and attended church. In setting forth the activities of daily living I am mindful of variations were [sic] on occasion she would need to periodically rest while doing household activities.

(T. 311-12) (internal citations omitted and paragraphs added).

In the instant case, Plaintiff argues that the ALJ failed to cite contradictory evidence in support of his decision to "reject" Dr. Meyer's opinion. Pl.'s Mem. Supp. (# 7) at 17-22. A thorough review of the ALJ's detailed rationale (T. 311-12) reveals that this argument lacks merit. In fact, the ALJ refers to evidence from Gregory Glances M.D., Plaintiff's primary care physician, from July 18, 2013 and August 8, 2014. (T. 311.) In addition to citing contradictory evidence, the ALJ also points out how Plaintiff's activities of daily living were inconsistent Dr. Meyer's opinion. (T. 311.) Finally, the ALJ also gave "limited weight" to Dr. Meyer's opinion regarding Plaintiff's

14

ability to reach and handle and push and pull because Dr. Meyer failed to qualify the limitations in a manner that was consistent with agency policy.  (T. 311.)

In sum, the various rationales given by the ALJ for discounting the opinions offered by Dr. Meyer are legally sufficient in that they comply with the Regulations and relevant case law. Consequently, the Commissioner is entitled to summary judgment on this issue.

## VI.    Conclusion

In light of the foregoing, the Court RECOMMENDS that Plaintiff's motion for summary judgment (# 6) be DENIED, and the Commissioner's motion for summary judgment (# 12) be GRANTED.

Signed: February 25, 2018

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).